| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------x<br>In re:<br><br>UNED ASSOCIATES, LLC,<br><br>                                Debtor.<br>------------------------------------------------------------------x | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 07-10412 (ALG) |

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

FINKEL GOLDSTEIN ROSENBLOOM & NASH, LLP
Counsel for the Debtor
 By:  Kevin J. Nash, Esq.
26 Broadway
Suite 711
New York, New York 10004

RICHARD L. KORAL, ESQ.
Counsel for 211 East 51 LLC
60 East 42nd Street
Suite 1136
New York, New York 10165

LUSKIN, STERN & EISLER LLP
Counsel for Manufacturers and Traders Trust Company
 By:  Michael Luskin, Esq.
330 Madison Avenue
34th Floor
New York, New York 10017

SILLER WILK LLP
Counsel for Okeanos, Inc.
 By:  Eric J. Snyder, Esq.
675 Third Avenue
New York, New York 10017

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion to dismiss, or in the alternative to abstain from the Chapter 11 case of UNED Associates, LLC ("UNED," or the "Debtor"). The motion has been filed by 211 East 51, LLC ("211 East"), a potential purchaser of the real property owned by the Debtor. The property in question, located at 211 East 51st Street, New York, NY (the "Property"), is the sole asset of the Debtor. The building consists of eighty-five residential units and three commercial spaces, all of which are vacant but for one tenant, Okeanos, Inc. ("Okeanos"), which has a lease for rental of one of the commercial spaces.[1]

211 East entered into a contract to buy the Property, dated March 30, 2006 (the "Original Contract"), following marketing of the property by UNED.[2] 211 East states that it intended to purchase the Property for renovation into condominiums. The Original Contract initially called for an all-cash sale, with closing to take place on July 12, 2006, time being of the essence. The Original Contract was subsequently modified by agreement, dated July 7, 2006 (the "Extension Agreement") that, among other things, extended the closing date to October 31, 2006 and allowed 211 East to enter the property in advance of the closing to conduct preparatory work, including demolition and obtaining certain necessary permits. The closing did not take place as scheduled, however, and both parties claim that the other was in default.

---

[1] The motion was initially joined by Okeanos, but its objection was withdrawn at a hearing held on April 11, 2007, on the basis of a representation of the Debtor that if the property is sold to H. Justin Realty Services LLC ("H. Justin"), as planned, H. Justin would buy the property subject to the lease.

[2] The Debtor has filed a motion to reject the Original Contract and a motion to enter into a sale with H. Justin in the amount of $43,001,000. Both motions are noticed to be heard later this month.

211 East claims that the property was not ready for development as represented by UNED. The Debtor counters that 211 East defaulted on account of its problems obtaining financing. Specifically, the Debtor asserts that UNED initially represented that it had a commitment from HSBC Bank for both construction and acquisition financing. To facilitate the financing, 211 East asked UNED for purchase money financing of $12 million, pending receipt of the construction loan from HSBC.[3] Although UNED agreed to accept a $12 million convertible promissory note (the "Note") at some point in the transaction, the financing from HSBC eventually fell through.[4] 211 East then obtained an acquisition loan in the amount of $32 million from New York Community Bank ("NYCB"), but this was insufficient to cover the purchase price of $40 million. 211 East claims that UNED improperly disavowed the Note and demanded payment in cash. UNED claims the Note was not viable standing alone without the construction mortgage from HSBC, and is therefore a nullity. The last closing on the Property was scheduled to take place on January 19, 2007, at which time UNED refused to deliver the deed without an all-cash purchase. Both parties declared the other in default. 211 East claims to be ready, willing and able to close the sale, although it may be able to do so only on its own terms.

UNED filed this Chapter 11 case on February 20, 2007. On February 28, 2007, a loan of approximately $17.5 million previously obtained by UNED from Manufacturers and Traders Trust Company ("M&T Bank") came due.[5] On March 7, 2007, the Debtor

---

[3] The Debtor argues, "[T]he purported note was intended simply as a preliminary document to facilitate release and review of the entire HSBC Bank loan file." (Resp. to Mot. to Dismiss at 10).

[4] The terms of the Note provided for payment no later than 18 months after closing, together with interest at a rate of 12%. In the event of nonpayment, the noteholder could elect to convert to a 9.8% equity membership interest in the development project.

[5] This amount consists of a $10 million first mortgage and a mezzanine loan of approximately $7.5 million, secured by a pledge of the equity interests in the Debtor. The equity interests in the Debtor are

3

moved to reject the Original Contract, and on April 5, 2007 the Debtor moved for authority to sell the Property to H. Justin at a higher amount than that offered under the Original Contract.

211 East has filed a motion to dismiss pursuant to § 1112(b) of the Bankruptcy Code on the ground this is a bad faith filing; in the alternative it seeks to have the Court abstain pursuant to § 305(a)(1) of the Bankruptcy Code. 211 East claims that the case was filed in bad faith because reorganization is not possible or intended and the petition was filed only to facilitate a breach of the Original Contract. It claims the estate is not insolvent based upon the Debtor's Schedules of Assets and Liabilities, noting that debts are scheduled as $22,456,923, while the scheduled value of the Property is $40 million. It argues that enforcement of the Original Contract would ensure payment to all creditors and that there are no bankruptcy issues in the case, which involves only a state law contract dispute between two parties. The Debtor counters that it is in financial distress as a result of the rights held by M&T Bank, and that it has several creditors other than 211 East. The Debtor further represents that it has an intention to reorganize and a strong likelihood of emerging from bankruptcy.

## Discussion

It is well recognized that the courts have implicit authority to dismiss a Chapter 11 petition as having been filed in bad faith. This principle was enunciated by the Second Circuit in *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227-28 (2d Cir. 1991), and was restated in *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310-12 (2d Cir. 1997). In the latter case, the Court held that the

---

held mainly by the estate of Edward Edelman. The Debtor and the Edelman estate are jointly liable on the guaranty. The pledge permits a UCC sale of the equity interests on short notice on a declaration of default, with no requirement for the commencement of a plenary foreclosure proceeding.

test for a bad faith filing is the following: "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would emerge from bankruptcy proceedings." *In re C-TC*, 113 F.3d at 1309, quoting *In re Cohoes*, 931 F.2d at 227. It is also well accepted that a good faith bankruptcy filing must be based on a reasonable degree of financial distress and cannot be used solely as a litigation tactic. *See In re SGL Carbon,* 200 F.3d 154, 162-63 (3d Cir. 1999); *In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 126-27 (Bankr. S.D.N.Y. 2005). On the other hand, dismissal on the grounds of lack of good faith "is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002); *see also Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989).

It is clear from the facts of this case that the situation is not as simple as suggested by 211 East. While the Debtor may be solvent as a balance sheet matter, the loan to M&T Bank is currently overdue, and the Debtor has virtually no liquidity, as the Property is vacant except for one commercial tenant. There is no reason to believe on the current record that the Debtor would have a defense to a foreclosure by M&T Bank, and a UCC foreclosure on the pledge of the Debtor's shares could apparently be conducted on only ten days' notice. In the meantime, any sale of the Property would be prevented as 211 East would file a *lis pendens*. There is no assurance M&T Bank would await the results of a resolution of the contract dispute in the State courts, and the accrual of default interest on its loans would be costly. Moreover, most of the equity in the Debtor is owned by a decedent's estate, which has a strong interest in a quick liquidation of its principal asset and should not be required to await the results of lengthy state litigation.

5

The Debtor has demonstrated an intent to reorganize, wishing to forestall any action on the part of M&T Bank, as well as to sell the Property quickly.  The fact that the Debtor has lined up a buyer at a higher offer for an all-cash sale, which is committed to closing within weeks, does not argue for dismissal on bad faith grounds.  211 East complains that the Debtor seeks only to gain a higher purchase price for the Property, but the issue whether the Debtor can reject the Original Contract is not before the Court on this motion.  Moreover, if the Contract is rejected, 211 East would have a claim for damages resulting from rejection of the Original Contract that would be payable before any return to equity and might be measured by all of the Debtor's potential profits, if it is established that the Debtor breached the Original Contract.  At this stage, it appears that the Debtor has an intent to reorganize, that the Debtor has a strong probability of emerging from bankruptcy, and that there is a sufficient degree of financial distress to justify the Chapter 11 filing.

211 East cites *Bal Harbour Club, Inc. v. Ava Dev., Inc. (In re Bal Harbour Club, Inc.)*, 316 F.3d 1192 (11th Cir. 2003), for the proposition that the filing of a bankruptcy petition solely to prevent a purchaser from buying real property pursuant to a contract constitutes a bad faith filing.  However, in that case, there was no mortgagee and no danger of a foreclosure or similar action.  211 East also relies on *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986), which expressed concern that the rights of a mortgagee could be compromised if a bankruptcy petition were filed solely to forestall a foreclosure.  In this case the mortgagee supports the filing.

211 East also asks the Court to abstain pursuant to § 305(a)(1) of the Bankruptcy Code, which provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension…."

"Abstention is an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code." L. King, et al., *Collier on Bankruptcy* at ¶ 305.02 (15th ed. rev. 2006). The test under § 305 is whether "the interests of both the 'creditors and the debtor' would be 'better served' by dismissal or suspension." *Id.*; *see also Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 625 (B.A.P. 9th Cir. 1995). There is no basis for the contention that the Debtor would be better served under the circumstances by this Court's abstention.

## Conclusion

The motion to dismiss or, alternatively, to abstain is denied. The Debtor is directed to settle an order on two days' notice.

Dated:  New York, New York
        April 20, 2007

                                        */s/ Allan L. Gropper*_____
                                        UNITED STATES BANKRUPTCY JUDGE

7